1  John Houston Scott (SBN 72578)
   Lizabeth N. de Vries (SBN 227215)
2  **SCOTT LAW FIRM**
   1388 Sutter Street, Suite 715
3  San Francisco, CA 94109
   Tel:  (415) 561-9601
4  Fax:  (415) 561-9609
   john@scottlawfirm.net
5  liza@scottlawfirm.net

6
   Izaak D. Schwaiger (SBN 267888)
7  527 Mendocino Avenue Ste. B
   Santa Rosa, CA 95401
8  Tel. (707) 595-4414
   Fax: (707) 851-1983
9  E-mail: izaak@izaakschwaiger.com

10 Attorneys for Plaintiff TAYLOR SWIFT

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| TAYLOR SWIFT<br><br>　　Plaintiff,<br><br>v.<br><br>CENTRAL MARIN POLICE AUTHORITY, DAVID WOO, VERA HICKS, and DOES 1-25<br><br>　　Defendants. | Case No. 3:17-cv-00866 VC<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS COMPLAINT**<br><br>Date:　　　May 18, 2017<br>Time:　　　10:00 a.m.<br>Courtroom: 4, 17th Floor<br>　　　　　　 450 Golden Gate Avenue<br>　　　　　　 San Francisco, CA 94102<br>Judge:　　　The Honorable Vince Chhabria |

## I. INTRODUCTION

This is not a garden variety excessive force case. Rather, the Plaintiff Taylor Swift had a history of epileptic seizures which on occasion required a call for emergency medical assistance. He was at home on the morning of September 2, 2016 and suffered a seizure. This case arises out of a 911 call for medical aid by his mother. Complaint, ¶ 9. The seizure was beginning to subside and Taylor's mother recognized the onset of his postictal period. During the postictal period, epileptics may become more easily frightened, upset, and unable to communicate. Complaint, ¶ 11.

The officers arrived at the scene along with medical personnel. They were aware that this was a call requesting medical assistance for an epileptic seizure at the time they came into contact with Taylor Swift.

The Complaint goes on to allege as follows:

12. Contemporaneous with the onset of Taylor's postictal period, officers from the Central Marin Police Authority arrived at the home along with emergency medical staff. Officers walked into the home and one said to the paramedics, "We'll get this." Officers David Woo and Vera Hicks contacted Taylor in the living room where he was beginning to stand up. Despite their awareness of the medical nature of the call, Officers Woo and Hicks determined that Taylor posed a danger to law enforcement staff because he appeared agitated and was not complying with the officers' orders. The officers yelled, "Stop resisting!" and attempted to gain control of Taylor by forcing him face down on an air mattress on the floor and placing him in a rear wrist lock.

13. Officers are trained that a cardinal rule in the handling of any person having a seizure is that the subject should not be restrained in any way unless it is essential for his safety or the safety of others. It is well known that restraint of persons during or after a seizure may exacerbate or precipitate combativeness. As the restrained subject's resistance to his restraints increases, so does the risk to his life. Restraining an epileptic face-down and/or with his arms behind his back poses an aggravated danger of asphyxiation.

14. Officers Woo and Hicks' actions aggravated and escalated the situation. Officer Woo then unholstered his Taser and fired it into Taylor's back while Officer Hick's attempted to hold Taylor's body down. Taylor began to scream in pain. Officer Woo fired a second and third volley of electrical current into his body. Taylor was held face-down on the ground and handcuffs were applied behind his back. Taylor called for his mother, and began to slur that he couldn't breathe. Taylor's mother pleaded with the officers to roll him onto his side. When they did, she could see that his face was covered in blood.

15. Taylor was removed from his home on a gurney and handcuffed, still within his postictal period, and transported to Marin General Hospital. Taylor was charged by Officer Woo with violations of California Penal Code Sections 148(a)(1), resisting arrest, and 243(b), assault on a peace officer. The Marin County District Attorney declined to prosecute. Body-worn cameras were employed during this event, and were requested by Taylor following the D.A.'s rejection of his case. To date the Central Marin Police Authority have refused to provide them to him.

It is true that Plaintiff has not alleged any facts to support a *Monell* claim based on (1) a custom or policy of excessive force or (2) deliberate indifference to the use of excessive. As to those two *Monell* theories.  The court has discretion to dismiss those *Monell* theories at this time, or allow Plaintiff the opportunity to conduct discovery and decide the issue at the summary judgment stage.

The *Monell* theory based on inadequate training and supervision regarding the use of force on a person in the midst of a serious medical emergency, an epileptic seizure, does not require evidence of a custom or practice to be actionable. *City of Canton v Harris*, 489 U.S. 378 (1989) The need for more or different training or supervision of  police officers is so obvious that a jury could find deliberate indifference based on a single incident. *Id*. at 390.  See also, *Oviat v Pearce*, 954 F2d 1470 (9th Cir. 1992); *Lee v City of Los Angeles*, 250 F.3d 668 (9th Cir. 2001).

In addition, a *Monell* theory based on ratification does not require evidence of a custom or practice.  Rather, it requires proof that a municipal policy maker made a conscious, affirmative choice to ratify the conduct in question. *City of St. Louis v Praprotnik*, 485 U.S. 112 (1988); *Lassiter v City of Bremerton*, 556 F.3d 1049 (9th Cir. 2009); *Lytle v Car*l, 382 F.3d 978 (9th Cir. 2004).

As to Plaintiff's request for appropriate injunctive relief, this case falls within the narrow class of cases involving police misconduct where federal courts have recognized certain limited types of injunctive relief are appropriate.

## II.   ARGUMENT

### A.   Applicable Law Regarding a Motion to Dismiss

A dismissal motion should be denied if the subject complaint contains factual allegations adequate to give defendants fair notice of the pending claims, and, enables them to defend

- 2 -

themselves if the complaint's allegations, taken as true, plausibly suggest entitlement to relief. *Starr v. Baca*, 652 F.3d 1202, 1216-1217 (9th Cir. 2011), rehearing en banc denied, 659 F.3d 850 (9th Cir. 2011). When ruling on a motion to dismiss, the Court must accept as true all of the factual allegations contained in the complaint. *Erickson v. Pardus*, 551 U.S. 89, 94, 127 S. Ct. 2197, 167 L. Ed. 2d 1081 (2007).

In addition, the Court must draw inferences in favor of the plaintiff. The complaint should be construed favorably to the pleader. *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974); see also *Walleri v. Federal Home Loan Bank of Seattle*, 83 F.3d 1575, 1580 (9th Cir. 1996).

Dismissal for failure to state a claim is proper "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding*, 467 U.S. 69, 73, 81 L. Ed. 2d 59, 104 S. Ct. 2229 (1984). The issue is whether the plaintiffs are entitled to offer evidence to support the claims, not whether based on a complaint's allegations the will prevail as a matter of law. *Scheuer v. Rhodes*, 416 U.S. 232, 236, 40 L. Ed. 2d 90, 94 S. Ct. 1683 (1974) (no quotations added). The Ninth Circuit has "repeatedly held that a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000).

### B. Plaintiff Has Alleged Sufficient Facts to Support a Deliberate Indifference Claim Based on a Failure to Train or Supervise

In *City of Canton v Harris*, 489 U.S. 378 (1989) a detainee brought a civil rights action against the City of Canton alleging she was deprived of her right to receive necessary medical attention while in police custody.  When taken into custody Harris made an incoherent remark when asked if she needed medical attention.  When brought inside the police station she slumped on the floor on two occasions.  She was then forced to lie on the floor to prevent falling.  No medical attention was ever summoned.  After about an hour she was released from custody and taken by ambulance, provided by her family, to a nearby hospital.

- 3 -

SCOTT LAW FIRM
1388 SUTTER STREET, SUITE 715
SAN FRANCISCO, CA 94109

Evidence was presented that shift commanders were authorized, in their sole discretion, to determine whether a detainee required medical attention. Evidence also suggested that shift commanders received no special training, beyond first aid training, to make a determination as to when to summon medical aid.

The Supreme Court held that there are limited circumstances in which an allegation of "failure to train" can be the basis for liability under Section 1983. Only where the failure to train reflects a deliberate or conscious choice by a municipality can a city be liable for a failure under Section 1983. *Id*. at 389. It may seem contrary to common sense, "but it may happen that in light of the duties assigned to specific officers or employees the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need." Id. at 390.   See also, *Tsao v Desert Palace, Inc*., 698 F3d 1128, 1145 (9th Cir. 2012) (policies of omissions regarding the supervision of employees can be policies or customs that create municipal liability.)

The facts alleged in this case are equally, if not more, egregious than the facts in *City of Canton v Harris*. It is foreseeable and likely that police officers will respond to scenes where a person is having a seizure, including but not limited to epileptic seizures. While in some situations a police officer may not be able to determine the cause of the seizure, in all likelihood it is a medical emergency.

Here, the police were called to the plaintiff's home in response to a 911 call requesting medical assistance. The officers were told by the plaintiff's mother that her son was starting to recover from an epileptic seizure. The officers responded by using force to restrain, and gain control, of a man experiencing a medical emergency. Instead of allowing the medical staff on scene to respond to the situation, they escalated it and caused serious injuries in the process.

The plaintiff has alleged that the acts and omissions of Officers Woo and Hicks were caused by inadequate training and/or supervision regarding the use of force and that these failures constituted deliberate indifference to his constitutional rights. The plaintiff also alleged that the

- 4 -

Central Marin Police Authority knew or should have known that its acts and omissions would likely result in a violation of the Fourth Amendment rights of a person in Plaintiff's situation. It is further alleged that these acts and omissions were a moving force in causing the injuries. (Complaint, at paragraphs 28 – 30).

As in *City of Canton v Harris*, *supra*, the need for more or different training is obvious, and the inadequacy is likely to result in a violation of constitutional rights. The risk of harm is not simply plausible. Rather, it is foreseeable and likely that persons suffering from a seizure will be seriously injured, or killed, if officers use force to restrain and control them. Either the officers did not receive adequate training to deal with a foreseeable medical emergency, or they acted contrary to their training and/or acted without adequate supervision. *Jackson v Barnes*, 749 F3d 755 (9th Cir. 2014) (a failure to supervise coupled with actual or constructive notice that its omission would likely result in a constitutional violation can be a basis for municipal liability based on deliberate indifference.)

If the officers here acted contrary to their training it would follow that a review of this incident by one or more supervisors would result in remedial training or some form of discipline. A failure to administratively review the use of force incident would constitute additional evidence of deliberate indifference. If the incident was administratively reviewed and found to be within policy by a final policymaker, a claim for ratification would also exist.

**C.  Plaintiff Has Alleged Sufficient Facts to Support a Ratification Claim**

The plaintiff has also alleged municipal liability based on ratification. In *City of St. Louis v Praprotnik*, 485 U.S. 112 (1988) the court recognized the relevance of ratification to what may be chargeable as municipal liability. See also, *Christie v Iopa*, 176 F3d 1231 99th Cir. 1999); *Trevino v Gates*, 99 F3d 911 (9th Cir. 1996); and *Gillette v Gilmore*, 979 F2d 1342 (9th Cir. 1992).

A single decision by a municipal policymaker may be sufficient to trigger Section 1983 liability under *Monell*. *Lassiter v City of Bremerton*, 556 F3d 1049 (9th Cir. 2009). Ratification requires both knowledge of the alleged constitutional violation, and proof that the policymaker specifically approved the subordinate's act. *Lytle v Carl*, 382 F3d 978 (9th Cir. 2004).

Liability based on a theory of ratification does not require evidence of a custom or practice of constitutional violations. Rather, a final policymaker must have knowledge of the alleged constitutional violation and specifically approve of the subordinate's acts. Here, given the seriousness of the injuries sustained requiring the plaintiff to be taken to a local hospital on a gurney, with his face covered in blood, it is reasonable to infer this incident was reviewed by the Chief of Police. If he approved of the officers acts this would be evidence of ratification. If this was not reviewed, it would be additional evidence of deliberate indifference based on inadequate supervision.

### D. Plaintiff's Prayer for Injunctive Relief is Proper and Supported by Facts

In *City of Los Angeles v Lyons*, 461 U.S. 95 (1983) the plaintiff lacked standing because it was speculation and conjecture that he might be subjected to a chokehold in the future. Here, it is quite foreseeable that Taylor Swift will have another medical emergency, an epileptic seizure, that will result in officers from the same agency responding and resorting to the unnecessary use of force. For that reason, damages are not an adequate remedy at law. Here Taylor Swift suffered serious injuries as alleged in paragraphs 13 and 14 of the Complaint.

It is foreseeable that he will have other seizures within the jurisdiction of the Central Marin Police Authority. He has alleged, at paragraph 10 of the Complaint, that between September 2015 and September 2016 emergency personnel were called to his residence on six occasions to help him during the most serious seizures. The injunctive relief could be narrowly tailored in relation to the training and supervision of officers who, as part of their jobs, respond to calls involving seizures and related medical emergencies. This injunctive relief would have the benefit of not only protecting the plaintiff from further assaults by police officers, it could well save the lives of others who request help by dialing 911 when experiencing seizures or other related medical emergencies.

### III. CONCLUSION

For these reasons the motion to dismiss should be denied. Alternatively, plaintiff should be given leave to amend.

Dated: April 5, 2017                        Respectfully Submitted,

**SCOTT LAW FIRM**


/s/ John Houston Scott
John Houston Scott
Attorney for Plaintiff

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS COMPLAINT